IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KRISTEN GIURA,** | : |
| Plaintiff, | : |
| v. | : **JURY TRIAL DEMANDED** |
| **NETFLIX, INC. and DOES, 1-5**, | : |
| Defendant**.** | : Civil Action No. |

## COMPLAINT

Plaintiff, Kristen Giura (formerly Kristen Schimpf (hereafter "Giura"), by and through her attorney, Samuel B. Fineman, Esq. of Semanoff Ormsby Greenberg & Torchia LLC, for her Complaint against Defendants, Netflix, Inc. (hereafter "Netflix") and Does 1-5 (hereafter collectively referred to as "Defendants"), allege as follows:

## INTRODUCTION

1. This is a civil action seeking actual and punitive damages for claims of false light invasion of privacy, defamation, right-of-publicity and negligent infliction of emotional distress based on Defendant Netflix's false depiction of Giura in its documentary film, *Untold: The Fall of Favre* ("*Untold*"), a film chronicling Bret Favre's "sexting" scandal during his tenure with the New York Jets football team.

## PARTIES AND JURISDICTION

1. Plaintiff is a resident of New Jersey.

2. On information and belief, Defendant Netflix is a Delaware corporation whose registered agent is CT Corporation, 1209 Orange Street, Wilmington, Delaware 19801.

3. Defendants Does 1 through 5 are other individuals or entities who participated in the false depiction of Giura in *Untold*. Giura is unaware of the true names or capacities of Does 1 through 10. Giura is informed and believes, and on that basis avers, that Does 1 through 5 either (a) directly performed the acts alleged herein, (b) were acting as the agents, principals, alter egos, employees, or representatives of the other Defendants, and/or (c) otherwise participated in the acts alleged herein with the other Defendants. Accordingly, Defendants Does 1 through 5 each are liable for all of the acts alleged herein because they were the cause in fact and proximate cause of all injuries suffered by Giura as alleged herein. Giura will amend the Complaint to state the true names of Defendants Does 1 through 5 when their identities are discovered.

4. This Court has subject matter jurisdiction over this action pursuant to 28 USCS § 1332, as there is complete diversity of citizenship between Plaintiff Giura and Defendant Netflix, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over Plaintiff Giura as she is a resident of New Jersey.

6. This Court has personal jurisdiction over Defendant Netflix as it conducts substantial business in New Jersey, maintains an interactive website accessible to New Jersey residents, and the claims arise from Netflix's activities in New Jersey where it published and distributed the false content at issue and where Giura's reputation was harmed.

7. Venue is proper in this Court pursuant to 28 USCS § 1391, as a substantial part of the events giving rise to the claims occurred in this district -- where Giura's reputation was diminished -- and defamatory statements were published and accessible to New Jersey residents, and where the original footage was shot at Giant's Stadium in New Jersey.

**FACTS**

8. In 2010, Plaintiff Giura was interviewed by a local New York City news crew at Giants Stadium parking lot regarding Brett Favre's "sexting" scandal when he was with the New York Jets. During this interview, Giura made the following statement: "It can go both ways. If she [Jenn Sterger] knows that he has a wife and she's doing it anyway. It's really…both are wrong."

9. For point of reference, Jenn Sterger was a Jets employee who alleged unwanted sexual advances by Bret Favre, a powerful, famous athlete.

10. Giura's interview was part of a longer conversation that addressed broader social issues related to the scandal.

11. In 2025, Defendant Netflix produced and distributed a documentary titled *Untold: The Fall of Favre* (hereafter "*Untold*") on its streaming platform.

12. Giura appears in this documentary at approximately 41 minutes and 2 seconds.

13. Defendant Netflix included parts of Giura's original 2010 interview – again, derived from footage at a Giants Stadium parking lot taken by a local New York City news affiliate filming members of the public for a story concerning the same Favre "sexting" scandal when it was fresh) -- but selectively edited her comments, truncating the longer interview and removing important context.

14. To be clear, Netflix made no efforts and took no action to identify and interview Giura for *Untold*.

15. This selective editing portrayed Giura as a Favre sympathizer and a female counterpoint to Sterger, which is an arrant misrepresentation of Giura's views about power imbalance and sexism in the workplace.

16. Defendant Netflix did not obtain Giura's consent to include her in the documentary or to edit her interview in this manner.

17. The documentary has been widely distributed on Netflix's streaming platform, which has millions of subscribers worldwide.

18. As a result of Netflix's actions, Giura has suffered significant harm to her personal and professional reputation as a health care administrator.

19. Giura has faced confrontations and backlash from colleagues and others who recognized her in the documentary.

20. Giura believes this false depiction has directly impacted her career, including being passed over for a promotion.

21. On November 17, 2025, Plaintiff, through counsel, sent a demand letter to Defendant Netflix requesting removal of Giura's interview from the documentary and compensation for damages. See Exhibit "A."

22. The demand letter also served as a preservation notice for all evidence related to the production, editing, and distribution of the documentary.

23. On information and belief, Defendant Netflix has failed to remove Giura's interview from the documentary or to compensate her for the damages she has suffered.

## CAUSES OF ACTION

## COUNT I – FALSE LIGHT

24. Plaintiff Giura repeats and realleges the allegations set forth in paragraphs 1 through 23 as if fully set forth herein.

25. Netflix publicized information or material that placed Giura in a false light.

26. Netflix selectively edited Giura's 2010 interview, truncating a longer conversation and removing important context, thereby creating a false impression of her views on the Brett Favre texting scandal, specifically implying that she sympathized with Favre, which is false.

27. Netflix edited footage portrayed Giura as a Favre sympathizer and a female counterpoint to Jenn Sterger, which misrepresented her actual views.

28. Netflix distributed this false portrayal through its documentary *Untold* on its streaming platform, which has millions of subscribers worldwide.

29. The false light in which Giura was placed would be highly offensive to a reasonable person.

30. Being portrayed as someone who excuses or sympathizes with inappropriate behavior in a high-profile documentary about sexual harassment would be highly offensive to a reasonable person, particularly for a professional woman in a leadership position in healthcare.

31. This portrayal has caused Giura to face confrontations from colleagues and others who recognized her in the documentary.

32. Netflix had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Giura would be placed.

33. Netflix, as a sophisticated media company, knew or should have known that selectively editing Plaintiff's interview would create a false impression of her views.

34. Netflic nonetheless proceeded to include the edited footage in its documentary without verifying the accuracy of the portrayal or obtaining Giura's consent.

35. As a direct and proximate result of Netflix's actions, Giura has suffered damage to her personal and professional reputation, emotional distress, and career setbacks.

**COUNT II – DEFAMATION**

36. Plaintiff Giua repeats and realleges the allegations set forth in paragraphs 1 through 35 as if fully set forth herein.

37. Netflix made a false and defamatory statement concerning Giura.

38. By selectively editing Giura's 2010 interview and removing important context, Netflix effectively created a false statement about Giura's position on the Brett Favre sexting scandal, portraying her as someone who excuses or sympathizes with inappropriate behavior.

39. This portrayal was false and defamatory because it misrepresented Giura's actual views and portrayed her in a manner that would lower her in the estimation of the community or deter third persons from associating with her.

40. Netflix published this false and defamatory statement to third parties.

41. Netflix distributed the documentary *Untold* containing the false portrayal of Giura's on its streaming platform, which has millions of subscribers worldwide.

42. Netflix was at least negligent in publishing this false and defamatory statement.

43. Netflix, as a sophisticated media company, failed to exercise reasonable care in its editing decisions, neglecting to present Giura's comments in their proper context.

44. Netflix's publication of this false and defamatory statement caused harm to Plaintiff.

45. As a result of Defendant's actions, Plaintiff has suffered damage to her personal and professional reputation, including confrontations from colleagues and potentially being passed over for a promotion.

## COUNT III – RIGHT-OF-PUBLICITY

46. Plaintiff Giura repeats and realleges the allegations set forth in paragraphs 1 through 45 as if fully set forth herein.

47. Netflix used Giura's name, likeness, or identity.

48. Netflix included Giura's image and interview in its documentary *Untold* without her consent.

49. The use was for Netflix's benefit.

50. Netflix benefited commercially from the use of Giura's likeness as part of its documentary, which is available on its subscription-based streaming platform.

51. The documentary is a commercial product that generates revenue for Netflix through subscription fees and increased viewership.

52. The use was without Giura's consent.

53. Giura did not consent to the use of her likeness in Netflix's documentary, particularly as it was presented in a misleading manner that portrayed her as a Favre sympathizer.

54. Giura was not contacted by Netflix to obtain permission to use the 2010 footage in its documentary.

55. As a direct and proximate result of Netflix's actions, Giura has suffered damages, including but not limited to the commercial value of her likeness and the harm caused by the unauthorized use.

## COUNT IV – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

56. Plaintiff Giura repeats and realleges the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

57. Netflix owed a duty of care to Giura.

58. As a media company producing documentaries about real people, Netflix had a duty to accurately represent individuals featured in its productions and to avoid causing foreseeable harm through misrepresentation.

59. Netflix breached that duty by selectively editing Giura's 2010 interview, removing context and creating a false impression of her views.

60. Netflix failed to take reasonable steps to ensure the accuracy of its portrayal of Giura or to obtain her consent for the use of her likeness.

61. Giura suffered severe emotional distress.

62. As a result of Netflix's breach, Giura has suffered emotional distress from the damage to her reputation, confrontations with colleagues, and potential career setbacks.

63. Netflix's breach was the proximate cause of Giura's emotional distress.

64. Netflix's editorial decisions were the proximate cause of Giura's emotional distress, as the misrepresentation of her views in a widely distributed documentary directly led to the negative consequences she has experienced.

65. Netflix should have foreseen that selectively editing an interview to portray someone as sympathizing with inappropriate behavior would cause emotional distress to that person, particularly when that person is a professional whose reputation is important to her career.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Kristen Giura, respectfully requests that this Court enter judgment in her favor and against Defendant, Netflix, Inc., and grant the following relief:

1. An order requiring Defendant Netflix to remove Plaintiff Giura's interview from the documentary *Untold: The Fall of Favre* on all platforms where it is available;

2. Compensatory damages in an amount to be determined at trial, but in excess of $1,000,000.00 for harm to Plaintiff Giura's personal and professional reputation, emotional distress, and career impact;

3. Punitive damages pursuant to Award of punitive damage, in an amount to be determined at trial, for Defendant Netflix's wanton and willful disregard of the harm that would foreseeably be caused to Plaintiff Giura;

4. Reasonable attorneys' fees and costs incurred in bringing this action; and

5. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Giura demands a trial by jury on all issues so triable.

Respectfully submitted,

SEMANOFF ORMSBY GREENBERG & TORCHIA, LLC
*/s/Samuel B. Fineman*
Samuel B. Fineman, Esq.
NJ ID No. 005381999
2617 Huntingdon Pike
Huntingdon Valley, PA 19006
(215) 887-0200 – tel.
sfineman@sogtlaw.com
Counsel for Plaintiff, Kristen Giura

Dated: December 22, 2025